IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LECG CORPORATION, et al.,<br>          Plaintiffs,<br><br>          v.<br><br>MANUEL ABDALA, et al.,<br>          Defendants,<br>          and<br><br><br>WILMINGTON TRUST COMPANY,<br>          Interested Party. | )<br>)<br>)<br>)     Civil Action No. 11-3247-SD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## [PROPOSED] ORDER

AND NOW, this __ day of _____, 20__, upon consideration of the Motion for Approval

of Return of the Remaining Assets of the Trust for the LECG Corporation Deferred Compensation

Plans to LECG Corporation (the "Motion") filed by LECG Corporation, LECG, LLC, and LECG

Corporation Deferred Compensation Plan Committee, said Motion is GRANTED.

**Accordingly, it is hereby ORDERED that:**

(1)     The grantor trust established in connection with the LECG Corporation Deferred

Compensation Plans, the terms of which are set forth in a Master Trust Agreement, as amended,

between Wilmington Trust Company, as trustee, and LECG Corporation as grantor (the

"Trust"), is hereby declared terminated; and

(2)     Wilmington Trust, National Association is hereby directed to return the

remaining assets of the Trust to LECG Corporation in the manner instructed by LECG

Corporation pursuant to Section 9.2 of the LECG Corporation Deferred Compensation Plans Master Trust Agreement.

      Dated:

                    By the Court:

                    _____

                    Stewart Dalzell, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LECG CORPORATION, et al., <br>     Plaintiffs, <br><br> v. <br><br> MANUEL ABDALA, et al., <br>     Defendants, <br><br> and <br><br> WILMINGTON TRUST COMPANY, <br>     Interested Party. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No. 11-3247-SD |

## MOTION FOR APPROVAL OF RETURN OF THE REMAINING ASSETS OF THE TRUST FOR THE LECG CORPORATION DEFERRED COMPENSATION PLANS TO LECG CORPORATION

Plaintiffs LECG Corporation, LECG, LLC, and LECG Corporation Deferred Compensation Plan Committee (collectively, "LECG") hereby file this motion (the "Motion") for an Order declaring that the trust is terminated and directing the return to LECG Corporation of the remaining assets held in trust by Wilmington Trust, National Association (the "Trustee"). In further support of this Motion, LECG states as follows:

1.      On or about May 18, 2011, LECG filed this lawsuit naming as defendants all twenty-seven of the participants ("Participants") in the LECG Corporation Deferred Compensation Plan for Employees (the "Plan") and the LECG Corporation Deferred Compensation Plan for Independent Contractors (collectively, the "Plans").

2.      In connection with the Plans, LECG Corporation established a grantor trust (the "Trust"), the terms of which are set forth in a Master Trust Agreement, as amended, between Wilmington Trust Company, as trustee, and LECG Corporation as grantor. See Compl. ¶¶ 35-36, 40-41, 49-54, Exs. A-D.

4694812

3.      On or about February 28, 2011, LECG Corporation notified Wilmington Trust Company that LECG Corporation had become insolvent, as that term is defined in the Master Trust Agreement. Id. ¶ 53, Ex. E. The Master Trust Agreement provides that, if LECG is insolvent, the Trustee is to cease paying benefits from the Trust to the Plans' Participants and beneficiaries ("Beneficiaries") and to hold the Trust assets for the benefit of LECG's creditors. Compl. Ex. A, Section 3.7(b)(iii).

4.      After Wilmington Trust Company was notified that LECG was insolvent, Wilmington Trust Company ceased making payments to Participants pursuant to the terms of the Master Trust Agreement, and many Participants demanded payment of benefits and/or made claims for payment of benefits under the Plans.

5.      In this action, LECG's complaint sought a judicial determination that Wilmington Trust Company, as trustee, properly ceased payment of benefits from the Trust to the Participants, and to the extent that any Participants had a right to receive payment from the Trust, such right was no greater than the right of an unsecured general creditor of LECG, and the Trust's assets could be used by LECG for the benefit of the claims of its general creditors. See id. ¶¶ 1, 60-62. LECG named as defendants all Participants with outstanding or potentially outstanding claims to benefits under the Plans.

6.      The Master Trust Agreement provides that the Trustee is authorized to make payment directed by court order in any action in which the Trustee has been named as a party. Compl. Ex. A, § 3.11. Wilmington Trust Company was the original trustee of the Trust and was named as a nominal defendant in this action. Wilmington Trust Company's rights and obligations under the Master Trust Agreement relating to the Trust were assigned to Wilmington Trust, National Association in April 2012, and Wilmington Trust, National Association currently serves as the Trustee of the Trust. The Trustee is represented by counsel.

4694812

7.      On or about June 1, 2011, several of the defendants in this action filed their own action in the United States District Court for the Northern District of California captioned Chang v. LECG Corporation Deferred Compensation Plan for Employees, Civil Action No. 11-2619 (the "CA Action"), asserting claims under ERISA.  The CA Action was related to this action because the central issue in dispute in both this action and the CA Action was whether the Participants were entitled to payments from the Plans.[1]

8.      In or about March 2012, without any party making any admission of any liability or any wrongdoing of any kind whatsoever, LECG and all but two of the plaintiffs in the CA Action executed a settlement agreement, settling all claims related to the subject matter of this action and the CA Action whereby LECG agreed to pay the settling plaintiffs in the CA Action (the "CA Plaintiffs") an aggregate amount of $3.4 million, subject to the release by the Trustee of such funds from the assets of the Trust.

9.      On or about March 28, 2012, upon consideration of the Joint Motion for Approval of Disbursement of Monies to Fund Settlement with California Plaintiffs (Dkt. # 78), this Court ordered the Trustee to disburse $3.4 million from the Trust to fund the settlement between LECG and the CA Plaintiffs.  See Dkt. # 88.  Such monies have since been disbursed by the Trustee and the settlement amounts have been paid to the CA Plaintiffs.  The parties in the CA Action have filed stipulations of dismissal, dismissing all claims with prejudice.  CA Action Dkt. # 93-94.

10.     After the settlement between LECG and the CA Plaintiffs, two plaintiffs remained in the stayed CA Action—Neal Lawson ("Lawson") and Daniel Regard ("Regard").  Additionally, after such settlement five defendants remained — Lawson, Regard, Jack Dewitt ("Dewitt"), Thomas Kabat ("Kabat"), and Edward Sherry ("Sherry").

---

[1] On January 5, 2012, the Court in the California Action entered an Order that stayed the California Action pending further Order by this Court. See CA Action Dkt. # 87.

3

4694812

11.     In or about April 2011, Dewitt filed a related action against LECG Corporation in the United States District Court for the Eastern District of Louisiana captioned Dewitt v. LECG Corporation, Civil Action No. 11-00984 (the "Dewitt Action") seeking payment under the Plan. By order dated September 7, 2011, the Dewitt Action was transferred to this jurisdiction, and by order dated December 6, 2011, this action and the Dewitt Action were consolidated, with this action being designated the lead case in the consolidated proceeding. See Dkt. # 63.

12.     In or about April 2012, without any party making any admission of any liability or any wrongdoing of any kind whatsoever, LECG and Dewitt executed a settlement agreement, settling all claims related to the subject matter of this action and the Dewitt Action whereby LECG agreed to pay Dewitt $79,478.46, subject to the release by the Trustee of such funds from the assets of the Trust.

13.     On or about May 30, 2012, upon consideration of the Joint Motion for Approval of Disbursement of Monies to Fund Settlement with Jack Dewitt (Dkt. # 108), this Court ordered the Trustee to disburse $79,478.46 from the Trust to fund the settlement between LECG and Dewitt. See Dkt. # 111. Such monies have since been disbursed by the Trustee and the settlement amount has been paid to Dewitt.

14.     In or about April 2012, without any party making any admission of any liability or any wrongdoing of any kind whatsoever, LECG and Kabat executed a settlement agreement, settling all claims related to the subject matter of this action whereby LECG agreed to pay Kabat $196,170.00, subject to the release by the Trustee of such funds from the assets of the Trust.

15.     On or about May 24, 2012, upon consideration of the Joint Motion for Approval of Disbursement of Monies to Fund Settlement with Thomas Kabat (Dkt. # 106), this Court ordered the Trustee to disburse $196,170.00 from the Trust to fund the settlement between LECG and Kabat. See Dkt. # 107. Such monies have since been disbursed by the Trustee and the settlement amount has been paid to Kabat.

4

4694812

16.    As of May 31, 2012, as a result of the above-referenced settlements, only three

defendants remained in this action—Lawson, Regard, and Sherry. On November 4, 2011, this Court

entered default against Sherry for failure to plead, appear, or otherwise defend. Additionally,

Lawson and Regard, had initiated earlier filed lawsuits related to this Action against LECG in the

United States District Court for the District of Columbia captioned Daniel Regard v. LECG, LLC, et

al., Civil Action No. 09-00055 (D.D.C.) (the "Original DC Action"). For these reasons, by Order

dated May 31, 2012, this Court severed LECG's claims against Sherry from LECG's claims against

Lawson and Regard and transferred this action with respect to Lawson and Regard to the District of

Columbia for consolidation with the Original DC Action (the consolidated action in the District of

Columbia is referred to herein as the "DC Actions"). See Dkt. # 113. The Court's May 31, 2012

Order also directed LECG to file a motion for default judgment against Sherry. See id.

17.    In or about January 2012, without any party making any admission of any liability or

any wrongdoing of any kind whatsoever, LECG, along with the additional counter-defendants

named in Lawson's and Regard's May 25, 2012 Amended Counterclaim, and Lawson and Regard

executed a settlement agreement, settling all claims related to the subject matter of this action, the

CA Action, and the DC Actions whereby LECG agreed to pay Lawson and Regard $900,000,

subject to the release by the Trustee of such funds from the assets of the Trust.

18.    On or about January 25, 2013, upon consideration of the Joint Motion for Approval

of Disbursement of Monies to Fund Settlement with Neal Lawson and Daniel Regard (DC Actions

Dkt. # 63), the District of Columbia District Court ordered the Trustee to disburse $900,000 from the

Trust to fund the settlement between LECG and Lawson and Regard. See DC Actions Dkt. # 64.

Such monies have since been disbursed by the Trustee and the settlement amounts have been paid to

Lawson and Regard. The parties in the DC Actions have filed stipulations of dismissal, dismissing

all claims and counterclaims with prejudice. See DC Actions Dkt. # 65-66.

4694812

19.    On June 12, 2012, upon consideration of LECG's Motion for Default Judgment against Sherry (Dkt. # 117), this Court entered default judgment against Sherry for failure to appear, plead, or otherwise defend. See Dkt. # 122. Sherry later disputed that service of the summons and complaint in this action, as well as LECG's motion for default judgment, were properly effectuated upon him by LECG. LECG maintains that such service of Sherry was proper and effective.

20.    In or about January 2013, without any party making any admission of any liability or any wrongdoing of any kind whatsoever, LECG and Sherry executed a settlement agreement, settling all claims related to the subject matter of this action whereby LECG agreed to pay Sherry $110,000, subject to the release by the Trustee of such funds from the assets of the Trust.

21.    On or about January 28, 2013, upon consideration of the Joint Motion for Approval of Disbursement of Monies to Fund Settlement with Edward Sherry (Dkt. # 124), this Court ordered the Trustee to disburse $110,000 from the Trust to fund the settlement between LECG and Sherry. See Dkt. # 126. Such monies have since been disbursed by the Trustee and the settlement amount has been paid to Sherry.

22.    LECG, thus, has settled with all Participants all claims that the Participants may have concerning the Plans, the Trust, the Master Trust Agreement, and the subject matter of this action, the DC Actions, the CA Action, and the Dewitt Action.

23.    Section 9.2 of the Master Trust Agreement ("Final Termination") provides that:

> The Trust shall not terminate until the date on which Participants and Beneficiaries are no longer entitled to benefits pursuant to the terms of the Plan(s) and all of the expenses of the Trust have been paid, and on such date the Trust shall terminate. Upon termination of the Trust, any assets remaining in the Trust shall be returned to the Company and the Subsidiaries. Such remaining assets shall be paid by the Trustee to the Company and the Subsidiaries in such amounts and in the manner instructed by the Company, whereupon the Trustee shall be released and discharged from all obligations hereunder. From and after the date of termination and until final distribution of the Trust Fund, the Trustee shall continue to have all of the powers provided herein as are necessary or expedient for the orderly liquidation and distribution of the Trust Fund.

Compl. Ex. A, § 9.2.

4694812

24.     Because LECG has settled all claims of all Participants concerning the Plans, there are no possible claims by any Participants or Beneficiaries for Plan benefits. Thus, there are no remaining Participants or Beneficiaries who are, or who claim they are, entitled to benefits pursuant to the terms of the Plans. Moreover, all expenses of the Trust have been paid.

25.     By letter dated February 22, 2013, LECG informed the Trustee that the Trust terminated pursuant to Section 9.2 of the Master Trust Agreement because, as of that date, there were no remaining Participants or Beneficiaries who were entitled to benefits under the Plans and all expenses of the Trust had been paid. LECG also requested that the Trustee return the remaining assets of the Trust to LECG Corporation pursuant to Section 9.2 of the Master Trust Agreement. A true and accurate copy of LECG's February 22, 2013 letter is attached hereto as Exhibit A.

26.     By letter dated March 6, 2013, the Trustee informed LECG that it will require a court order approving the return of the remaining Trust assets to LECG Corporation before returning the Trust assets to LECG Corporation pursuant to Section 9.2 of the Master Trust Agreement. A true and accurate copy of the Trustee's March 6, 2013 letter is attached hereto as Exhibit B.

27.  As explained above, the Master Trust Agreement provides that the Trustee is authorized to make payment from the Trust as directed by the Court in this action. See supra ¶ 6; Compl. Ex. A, § 3.11.

28.     Accordingly, LECG seeks an order from this Court declaring that there are no remaining Participants or Beneficiaries entitled to benefits pursuant to the terms of the Plans and that the Trust is, therefore, terminated pursuant to Section 9.2 of the Master Trust Agreement. LECG further seeks an order from this Court directing the Trustee, Wilmington Trust, National Association

4694812

to return the remaining assets of the Trust to LECG Corporation in a manner instructed by LECG pursuant to Section 9.2 of the Master Trust Agreement.

29.    Wilmington Trust, National Association does not oppose this motion, and has advised LECG that, if entered, it would comply with the Court's Order directing return of the remaining assets of the Trust to LECG Corporation.

WHEREFORE, LECG respectfully requests that the Court issue the Order attached hereto declaring that the Trust is terminated and approving the return by Wilmington Trust, National Association of the remaining assets held by it in the Trust to LECG Corporation, and for such other and further relief as the Court deems proper.

Respectfully submitted,

LECG Corporation, LECG, LLC and the LECG
Corporation Deferred Compensation Plan Committee

By its attorneys,

/s/ Joseph J. Centeno
Joseph J. Centeno
Obermayer, Rebmann, Maxwell and Hippel, LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
Tel: 215-665-3107
joseph.centeno@obermayer.com
Counsel for Plaintiffs,    LECG Corporation,

Of Counsel
David E. Lurie
Thomas E. Lent
Michael C. Birch
Lurie, Lent & Friedman, LLP
One McKinley Square
Boston, MA 02109
Tel: 617-367-1970
Fax: 617-367-1971
dlurie@lurielent.com
tlent@lurielent.com
Dated:  March 14, 2013                                    mbirch@lurielent.com

8

4694812

# Exhibit A

# LECG

February 22, 2013

**VIA FEDERAL EXPRESS AND FAX (302-427-4558)**
David Snyder
Assistant Vice President
Wilmington Trust Retirement and Institutional Services Company
Rodney Square North
1100 North Market Street
Mail Code: DE3-C090
Wilmington, DE 19890-0001

> Re:    LECG Corporation Deferred Compensation Plan - Termination

Dear David:

Please see the enclosed letter from the Trustee of the LECG Corporation Deferred Compensation Plan concerning the termination of the Plan and requesting return of all remaining Trust assets. Please forward this letter to the appropriate person(s) for further action.

Thank you for your attention to this matter. If you have any questions or need additional information, please contact me at (610) 688-8211 or jcall@lecg.com.

Sincerely,

Jan Fink Call
General Counsel

# LECG

February 22, 2013

**BY OVERNIGHT MAIL AND FAX**

Wilmington Trust, National Association

Re:    Termination of LECG Corporation Deferred Compensation Plan

Dear Sir or Madam:

I am writing to inform you, as trustee of the grantor trust (the "Trust") for the LECG Corporation Deferred Compensation Plans (the "Plans"), that as of the date hereof, there are no remaining Participants or Beneficiaries who are entitled to benefits pursuant to the terms of the Plans, and that all of the expenses of the Trust have been paid. The Trust is, therefore, terminated as of hereof pursuant to Section 9.2 of the Plans Master Trust Agreement (the "Master Trust Agreement"). Section 9.2 of the Master Trust Agreement also provides that, "[u]pon termination of the Trust, any assets remaining in the Trust shall be returned to the Company and the Subsidiaries in such amounts and in the manner instructed by the Company, whereupon the Trustee shall be released and discharged from all obligations hereunder." Accordingly, pursuant to Section 9.2, LECG Corporation hereby requests that Wilmington Trust, National Association return all remaining assets of the Trust to LECG Corporation by wire transfer. Please find enclosed wire instructions in furtherance of such payment.

Upon receipt of this letter, please confirm Wilmington Trust, National Association's intent to return the remaining assets of the Trust to LECG Corporation as hereby instructed pursuant to Section 9.2 of the Master Trust Agreement. Thank you in advance for your immediate attention to this matter. If you have any questions, please contact LECG's counsel, Jan Fink Call, at 610-688-8211.

Sincerely,

Bruce Rogoff, Chief Executive Officer

# Exhibit B

 **WILMINGTON TRUST**

Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-0001

March 6, 2013

Mr. Bruce Rogoff
Chief Executive Officer
LECG Corporation
900 West Valley Road, Suite 701
Wayne, PA 19087

Re: Master Trust Agreement for LECG Corporation Deferred Compensation Plan(s) (the "Trust Agreement")

Dear Mr. Rogoff:

Wilmington Trust, National Association ("Wilmington Trust") is in receipt of your letter dated February 22, 2013, concerning LECG Corporation's request to terminate the trust established pursuant to the above-referenced Trust Agreement and to return the assets in the trust to LECG Corporation.

Pursuant to Section 3.7(b)(iii) of the Trust Agreement, if LECG Corporation is "Insolvent" (as defined in the Trust Agreement), Wilmington Trust as Trustee shall hold the trust assets for the benefit of LECG Corporation's general creditors.

Consequently, as LECG Corporation has provided notice to Wilmington Trust that it is "Insolvent," Wilmington Trust requires a court order in able to terminate the trust and return the assets to LECG Corporation.

If you have any questions in this regard, please contact David Snyder at 302-651-8926.

Sincerely,

Nancy Gray
Vice President

cc Jan Fink Call, Esq.